L. L. KING v. COMMERCIAL CASUALTY INSURANCE COMPANY.

(Filed 23 October, 1929.)

**Insurance R b—In this case held: directed verdict on issue of accidental injury was proper in action on accident policy.**

Where the evidence of the plaintiff in his action to recover on a policy of accident insurance discloses that several years prior to the issuance of the policy he had been shot in the foot, the shot remaining in his foot without causing special pain or trouble, and that after the issuance of the policy he had accidentally sprained his ankle, which resulted in inflammation and necessitated an operation for the removal of the shot, and finally made it necessary to amputate the foot, and there is no evidence that the operation necessitated the amputation: *Held*, a directed verdict on the issue of whether the injury was caused by accidental means was proper, though the burden was on the plaintiff to show that his injury was within the provisions of the policy.

APPEAL by defendant from *Harris, J.,* at February Term, 1929, of NEW HANOVER. No error.

On 1 September, 1925, the defendant issued to the plaintiff an accident insurance policy containing this clause: "This policy insures against the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means, suicide, sane or insane, not included."

The plaintiff brought suit on the policy and at the trial the following verdict was returned:

1. Did the defendant issue to plaintiff policy No. CD-47164, as alleged in the complaint? Answer: Yes.

2. Did the injury complained of result directly and exclusively of all other causes solely through external, violent and accidental means as provided in said policy? Answer: Yes.

3. What amount, if any, is plaintiff entitled to recover of the defendant? ·Answer: $1,200 and interest from 1 March, 1928.

Judgment was rendered for the plaintiff from which the defendant appealed, assigning error.

*John A. Stevens and Bryan & Campbell for plaintiff.*
*Rountree & Carr and M. G. James for defendant.*

· ADAMS, J. The parties agreed that the first issue should be answered in the affirmative and that the third, if the plaintiff was entitled to recover, should be answered $1,200 with interest from 1 March, 1928. Whether the plaintiff was entitled to recover depended upon the answer to the second issue.

As the defendant introduced no evidence the controversy turned almost entirely upon the testimony of the plaintiff. The facts are undisputed. In ·August, 1927, the plaintiff sprained his left ankle. It swelled and developed into "a kind of reddish purple." In a few days it was examined by a physician and was photographed by the aid of X-rays. The picture revealed a small shot imbedded in the foot just above the toe joint, caused, it was said, by the accidental discharge of a gun in 1909. The shot was removed, but the pain continued. The physician then reopened the incision by which the shot had been removed and made another on· the other side of the foot; and on the next day he made four or five incisions. On two subsequent occasions he removed portions of bone and afterwards amputated the foot.

The specific question is whether the plaintiff's injury resulted directly and exclusively of all other causes solely through external, violent, and accidental means. The defendant contends, not that amputation resulting from the sprain alone would not have brought the injury within the terms of the policy, but that the injury resulted from a surgical operation for the removal of a shot on the side of the foot opposite the sprain and that it was not an effect resulting exclusively of all other causes from bodily injury sustained through external, violent, and accidental means; or if this position cannot be maintained that the second issue should have been submitted to the jury. The plaintiff contends, on the other hand, that it is immaterial whether blood poison was caused by the sprain or by the surgeon's act in removing the shot. The trial judge adopted the plaintiff's view of the law and instructed the jury, if they believed the evidence, to answer the second issue in the affirmative.

We have discovered nothing in the plaintiff's evidence from which the jury could reasonably infer that the condition of his foot was due to the imbedded shot or to the incision made for its removal. The shot had been there ·for several years and had never caused special pain or trouble.

This in effect, according to the evidence, was admitted by the defendant's agent before the policy was issued. The entire defense seems to rest on the theory that infection resulted from the operation to remove the shot, but there is nothing in the testimony to support the theory—no sufficient evidence to this effect. The burden, of course, was on the plaintiff to show that his injury is covered by the terms of the policy; but there is abundant evidence to support this conclusion and none which is so inconsistent with it as to require a new trial for error in the instruction on the second issue. If, however, infection followed the operation for the removal of the shot, it was not the natural or probable result of the plaintiff's act. It was not a result which would ordinarily follow the act, but one attended with an unexpected and unusual result. Vance on Insurance, 566, sec. 232; 6 Cooley's Briefs on Insurance, 5234; *Clay v. Insurance Co.,* 174 N. C., 642.

Our view of the undisputed evidence precludes the necessity of considering the interesting questions of law which under other conditions would have been controlling. We find

No error.